**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MIGUEL MEDINA,

                Plaintiff,

      v.

CHRISTOPHER LIAKOPOULOS, et al.,

                Defendants.

Case No. 22 cv 05043

Honorable Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

On the morning of July 22, 2022, Plaintiff Miguel Medina was walking down the street with a group of friends when a car driven by Chicago Police Officers Christopher Liakopoulos and Ruben Reynoso stopped alongside them. The parties vigorously dispute what happened next, but as a result of the encounter, one or both officers shot Plaintiff twice, once in the back and once in the leg. He has brought this federal lawsuit alleging excessive force, false arrest, and battery against the Officer Defendants. He also brings an indemnification claim against the City of Chicago. The Officer Defendants jointly move for summary judgment on the claims against them. *See* [156]. The City of Chicago separately moves for summary judgment on the claim for indemnification. *See* [153]. Because Plaintiff raises genuine disputes of material fact precluding summary judgment for the officers, and because the indemnification claim is not premature, both motions for summary judgment are denied and this case will be set for a jury trial.

### Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court does not "weigh the evidence and determine the truth of the matter" but rather determines whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### Facts

The following facts are undisputed unless otherwise stated.[1] At approximately 6:50 a.m. on July 22, 2022, Plaintiff and a group of friends were walking down the street. PRDSOF ¶ 26. At

---

[1] The Court cites to Plaintiff's response to the Officer Defendants' statement of facts as "PRDSOF" and the Officer Defendants' response to Plaintiff's statement of additional facts as "DRPSOAF."

one point, the group split up, and Plaintiff, A.A.,[2] and J.R. lingered behind. *Id.* Around the same time, Sergeant Liakopoulos and Officer Reynoso (the Officer Defendants) were driving to the Chicago Police Academy in an unmarked car to teach a training session. *Id.* ¶¶ 22, 23. Sergeant Liakopoulos was sitting in the driver's seat, while Officer Reynoso was sitting in the passenger's seat. *Id.* ¶ 23. As they were driving westbound on 18th Street, the Officer Defendants saw two individuals from the group on the north side of the street. *Id.* ¶ 28. The Officer Defendants claim the individuals appeared to be "tagging" a building,[3] but Plaintiff disputes this. *Id.* At the same time, Plaintiff, A.A., and J.R. were walking westbound towards the two individuals, with J.R. walking ahead of Plaintiff and A.A. *Id.* ¶ 29.

Upon seeing the two individuals, the Officer Defendants reversed their vehicle, stopped in line with them, and engaged in conversation. *Id.* ¶¶ 30, 32. During this time, Plaintiff and A.A. continued to walk westbound on 18th Street. *Id.* ¶ 32. J.R. turned back toward Plaintiff and A.A. and gestured for them to look at the car. *Id.* ¶ 33. The three of them then huddled up on the sidewalk, appearing to talk. *Id.* ¶ 34. At this time, Plaintiff's white hoodie pocket appeared to bulge outward as if it had an item in it, and Plaintiff admits he had a bottle of alcohol in his pocket. *Id.* ¶ 37. The Officer Defendants maintain that Officer Reynoso then saw a gun pass from Plaintiff to A.A. *Id.* ¶ 38. Plaintiff denies ever possessing a gun on the street or passing a gun to A.A. in view of the Officer Defendants. *Id.*; DRPSOAF ¶¶ 11, 15. At this point, the Officer Defendants reversed their vehicle again, moving closer to Plaintiff and A.A. PRDSOF ¶ 39. Plaintiff and A.A. began to approach the Officer Defendants' car.

What happens next is disputed. The Officer Defendants maintain that A.A. pulled a mask up over his face and held a gun to his chest as he approached, while Plaintiff swung a wine bottle in his hands. *Id.* ¶¶ 40, 41. According to the Officer Defendants, as Plaintiff and A.A. approached the car, Plaintiff and A.A. said to them, "Are you ready for this?" and "How about this?" in reference to the gun A.A. was holding. *Id.* ¶ 42. They maintain that Officer Reynoso held his badge out and identified himself as a police officer, and A.A. pointed his gun at him. *Id.* ¶¶ 43, 44. According to Officer Reynoso, he could see the barrel of the gun and believed he was going to die. *Id.* ¶¶ 45, 46. Sergeant Liakopoulos also believed that his life was in danger. *Id.* ¶ 52.

Plaintiff's version differs significantly. Plaintiff denies that A.A. brandished a gun before the shooting, and he denies knowing that A.A. had a gun on his person when they approached the car. Plaintiff claims he walked up to the car to identify the occupants and ascertain what they were doing. DRPSOAF ¶ 5.[4] Plaintiff asserts that as he approached the car, Officer Reynoso pointed his

---

[2] Because the incident at issue involved juveniles, the parties filed multiple exhibits under seal pursuant to the Illinois Juvenile Court Act, 705 ILCS 405/1-1 *et seq.*, and refer to the juvenile participants using their initials. The Court will do so here as well. If the Court refers to a sealed document, it attempts to do so without revealing any information that could be reasonably deemed confidential.

[3] Although not defined by the parties, the Court assumes the term "tagging" refers to the act of placing graffiti on a building.

[4] The Officer Defendants object that this fact lacks evidentiary support. The Court has reviewed the cited testimony from A.A.'s deposition and concludes that it supports the notion that Plaintiff and A.A. approached the car to see who was inside.

2

gun straight at Plaintiff so that Plaintiff saw the gun barrel in front of his face. *Id.* ¶ 8. Plaintiff admits that he had a wine bottle and his phone in his right hand, and he claims that he put his left hand up, with his palm facing the Officer Defendants, to show that he was not armed or a danger. *Id.* ¶ 9. Plaintiff denies that he or A.A. made any threats to the officers, and he further denies making any threatening gestures as if he had a gun. *Id.* ¶¶ 10, 12.[5] He claims that prior to the shooting, the Officer Defendants did not identify themselves as police officers. *Id.* ¶ 7.

The parties agree that the Officer Defendants then began shooting. It is undisputed that Officer Reynoso stuck his gun out of the passenger window, while Sergeant Liakopoulos pulled his gun out, stretched his arm in front of Officer Reynoso's body, and aimed out the front passenger window. *Id.* ¶¶ 20, 23. The Officer Defendants assert that they were aiming for A.A., but Plaintiff disputes this and claims they were aiming at him. A.A. was running down the street (away from the officers) and thereafter started shooting at the Officer Defendants. PRDSOF ¶ 61. Ultimately, Plaintiff was shot twice – once in the back and once in the leg. *Id.* ¶¶ 56, 57. Although the parties dispute the circumstances leading up to the shooting, the Court notes the incident was captured on surveillance videos, which were submitted as evidence in connection with the Officer Defendants' motion.

After the shooting, Plaintiff was transported to the hospital, where different officers arrested him for aggravated assault of a peace officer. *Id.* ¶¶ 72, 73. The arrest report identifies the shooting as the basis for the arrest and specifically names the Officer Defendants. Defs.' Ex. 2. Plaintiff was ultimately released without being charged. PRDSOF ¶ 74.

**Discussion**

**I.      Evidence Regarding Who Shot Plaintiff**

As their initial argument, the Officer Defendants argue that summary judgment on Counts I (excessive force) and II (battery) is warranted because there is no evidence as to which officer actually shot Plaintiff, so any argument that one or both of them shot him is conclusory and speculative. The Court disagrees. While Plaintiff may not have direct evidence of whose bullets struck him, "cases may always be proven by circumstantial evidence where direct evidence is unavailable." *Abdullahi v. City of Madison*, 423 F.3d 763, 772 (7th Cir. 2005). Neither Officer Defendant disputes that he was present during the interaction, discharged his firearm, and that Plaintiff was ultimately shot. Thus, Plaintiff "is *not* asking the finder of fact to *speculate* about the cause of [his injuries] but rather is asking the fact finder to *infer* causation, logically, from undisputed facts and competent evidence." *Id.* (emphasis in original). Put differently, there is a factual basis from which a reasonable jury could find that each of the Officer Defendants was personally involved and caused Plaintiff's injuries. *See Steinhoff v. Malovrh*, --- F.4th ----, 2026 WL 808852, at *5 (7th Cir. Mar. 24, 2026) (concluding "there is enough circumstantial evidence of an intentional use of excessive force to send this question to trial" even though the plaintiff did not see which officer hit him with a gun). The Court declines to grant summary judgment for the Officer Defendants on this ground.

_____

[5] The Officer Defendants admit that Plaintiff never made any gesture to infer that he was armed or had a gun. DRPSOAF ¶ 12.

## II.    Count I – Section 1983 – Excessive Force

### a.  Seizure

In Count I of the operative complaint, Plaintiff brings a claim for excessive force against the Officer Defendants pursuant to Section 1983 of Title 42 of the United States Code and the Fourth Amendment. "The Fourth Amendment prohibits the use of excessive force to seize a person in order to make an arrest." *Gupta v. Melloh*, 19 F.4th 990, 995–96 (7th Cir. 2021). To establish such a claim, a plaintiff must show he was seized and that the officers used unreasonable force. *See id.*

The Officer Defendants argue that because they were aiming for A.A., Plaintiff was not seized. Precedent from the United States Supreme Court and the Seventh Circuit distinguishes between "an accidental or tortious act which happens to be committed by a government official and an intentional detention that rises to the level of a constitutional violation." *See Campbell v. White*, 916 F.2d 421, 422–23 (7th Cir. 1990) (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989)). In *Campbell*, the Seventh Circuit held that no Fourth Amendment seizure occurred when an officer accidentally ran over a fleeing suspect with his car because the officer's action was not "the means intentionally applied to effect the stop, but was rather an unfortunate and regrettable accident." *Id.* at 423 (cleaned up). Courts in this district have applied this reasoning to cases involving accidental shootings, holding that individuals who were accidentally shot by police officers had not been seized for Fourth Amendment purposes. *See, e.g.*, *Warfield v. City of Chicago*, 565 F. Supp. 2d 948, 963 (N.D. Ill. 2008); *Brandon v. Vill. of Maywood*, 157 F. Supp. 2d 917, 924 (N.D. Ill. 2001).

In response, Plaintiff argues that there is evidence in the record that the Officer Defendants were, in fact, aiming for him, including his own testimony and evidence of A.A.'s location at the time of the shooting. After reviewing the record, the Court finds that there is a genuine dispute of material fact on this issue: the Officer Defendants maintain they were aiming for A.A., but Plaintiff offers competing evidence that the Officer Defendants were aiming at him. Further, the video evidence of the shooting does not "clearly contradict" Plaintiff's version of the facts. *See Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018); *see also Kailin v. Vill. of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023) ("Video evidence, however, can eviscerate a factual dispute only when the video is so definitive that there could be no reasonable disagreement about what the video depicts."). The Court has reviewed the video evidence closely and finds that when viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could find that the Officer Defendants were aiming at Plaintiff. *See* Defs.' Ex. 8, 12. For these reasons, summary judgment is denied on this ground.

### b.  Reasonable Use of Force

The Officer Defendants argue that even if Plaintiff was seized, his claim for excessive force fails because their use of force was objectively reasonable. Determining whether the use of force was reasonable requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). The

4

analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "A plaintiff must show the officer's use of force was objectively excessive from the perspective of a reasonable officer on the scene under the totality of the circumstances." *Horton*, 883 F.3d at 949. The relevant question is "whether a reasonable officer on the scene would have perceived [Plaintiff] as posing an imminent threat of death or serious physical injury." *Id.* at 952. The Seventh Circuit has commented that "summary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010).

As noted above, the parties dispute the circumstances surrounding the shooting. The Officer Defendants characterize their version of the events leading up to the shooting as:

> Plaintiff and A.A. were acting in concert as they approached the Officers' car from behind. Plaintiff was wearing a hooded sweatshirt, with a large pocket, and was holding a bottle of red wine and a cell phone in his right hand. A.A. was displaying a weapon in front of his chest. And both A.A. and Plaintiff made verbal threats in reference to the gun, jeering at the Officers. Fearing for their lives, both Officers drew their weapons and began firing. Plaintiff was shot twice, falling to the ground.

[156] at 18–19. However, Plaintiff largely disputes these facts, as well as the other facts Defendants advance elsewhere in their brief. In particular, Plaintiff denies 1) ever handling the gun before the shooting, 2) passing the gun to A.A., 3) that A.A. brandished the gun prior to Plaintiff being shot, and 4) that he or A.A. made any threats. In Plaintiff's version of the shooting, he and A.A. approached the car without brandishing a weapon. Plaintiff then put his hand up to show he was not a danger and was immediately shot. And the video evidence does not discredit Plaintiff's version. For example, the videos do not definitively show Plaintiff pass anything to A.A., let alone a gun, before the shooting, nor do they definitively show A.A. brandishing a weapon as he approached the Officer Defendants' car. They also corroborate Plaintiff's assertion that he was raising his hand prior to the shooting. There is also surveillance footage that captures the audio (but not the visual) of the shooting, and it does not capture any threatening statements before the sound of gunshots is heard. *See* Defs.' Ex. 9, 10.

The Court has reviewed the record and finds that Plaintiff has raised a genuine dispute of material fact that precludes summary judgment for the Officer Defendants. *See, e.g.*, *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003). Whether the Officer Defendants saw Plaintiff pass a gun to A.A., whether A.A. brandished the gun, whether Plaintiff or A.A. threatened the Officer Defendants, and whether Plaintiff otherwise posed a threat are all material facts that are in dispute. Thus, there is a genuine dispute of material fact that prevents the Court from granting summary judgment for the Officer Defendants on this ground.

### c. Qualified Immunity

The Officer Defendants also argue that they are entitled to qualified immunity on Count I. They argue that, assuming that unreasonable force was used, it was not clearly defined that it would

5

be "unconstitutional to shoot at Plaintiff in this circumstance considering he was wearing a hoodie that could conceal a weapon, was carrying a dark unidentified object in his hand, and was approaching in a threatening manner with an individual who was displaying a gun, verbally threatening to use it." [156] at 23. Plaintiff replies that qualified immunity does not apply given the disputed facts. The Court finds that there is a genuine dispute of material fact that goes directly to the core of the issue of qualified immunity, which precludes summary judgment for the Officer Defendants.

"Qualified immunity rests on two questions: 'first, whether the facts presented, taken in the light most favorable to the plaintiff, describe a violation of a constitutional right; and second, whether the federal right at issue was clearly established at the time of the alleged violation.'" *Pryor v. Corrigan*, 124 F.4th 475, 488 (7th Cir. 2024) (quoting *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021)). The burden is on the plaintiff to establish both prongs. *Id.* On a motion for summary judgment, "this district court has three options" where "material facts are disputed." *Villalobos v. Picicco*, 168 F.4th 1057, 1063 (7th Cir. 2026). First, it can grant the motion, "so long as it construes all facts in the plaintiff's favor." *Id.* at 1064. Second, it can deny the motion and reject the qualified immunity defense as a matter of law. *Id.* Third, "the district court can deny the summary judgment motion when there are disputed facts going to the heart of the immunity defense." *Id.* The Court finds that the third approach is applicable here.

Under the first prong of the qualified immunity analysis, a court must determine whether Plaintiff's federal rights were violated. *See id.* at 1062. When viewing the facts in the light most favorable to Plaintiff, which the Court must at this stage, the Court finds that use of deadly force on Plaintiff, as an unarmed, non-threatening individual, would violate his constitutional rights. *See, e.g.*, *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("A police officer may not seize an unarmed, nondangerous suspect by shooting him dead."); *Strand v. Minchuk*, 910 F.3d 909, 916 (7th Cir. 2018) ("The Fourth Amendment does not sanction an officer—without a word of warning—shooting an unarmed offender who is not fleeing, actively resisting, or posing an immediate threat to the officer or the public."). Of course, whether Plaintiff or A.A. were threatening the Officer Defendants or reasonably posed a threat is disputed by the parties, which goes to the heart of the issue.

To satisfy the second prong and show a right was clearly established, a plaintiff can either "point to a clearly analogous case establishing the right to be free from the conduct at issue" or "show that the conduct was 'so egregious that no reasonable person could have believed that it would not violate established rights.'" *Beaman v. Freesmeyer*, 776 F.3d 500, 508 (7th Cir. 2015) (quoting *Smith v. City of Chicago,* 242 F.3d 737, 742 (7th Cir. 2001)). It is without question that "shooting an unarmed and surrendering suspect who was not actively resisting in the moments before shooting and who posed a diminishing threat would violate clearly established law." *Finkley*, 10 F.4th at 742–43 (compiling cases); *see also Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 732 (7th Cir. 2013) ("Prior to 2007, it was well-established in this circuit that police officers could not use significant force on nonresistant or passively resisting suspects.").

The Officer Defendants argue that they are entitled to summary judgment because Plaintiff has not presented a factually analogous case that demonstrates a clearly established right. However, Plaintiff need not show an analogous case if he shows "that the force was so plainly excessive that,

as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment." *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015) (quoting *Findlay v. Lendermon,* 722 F.3d 895, 899 (7th Cir. 2013). In Plaintiff's version of the facts, he and A.A. walked toward the officers without making threats or brandishing a weapon. He raised his open hand to show he was not a threat, made no threatening movement with the objects in his other hand, and while his arm was raised, the Officer Defendants pointed their weapons at him and began firing. Under those circumstances, shooting Plaintiff would be plainly excessive.

Because there are genuine disputes of material fact that go to the core of the qualified immunity defense, the Court cannot find that the Officer Defendants are entitled to qualified immunity as a matter of law. However, the Officer Defendants will be permitted to re-raise such a defense "after a jury settles the relevant disputes of fact at trial." *See Villalobos*, 168 F.4th at 1064.

### III.     Count II – Battery

In Count II of the complaint, Plaintiff brings a state law battery claim. Under Illinois law, "battery is an intentional tort with three elements: (1) an intentional act by the defendant (2) that results in offensive contact with the plaintiff (3) without the plaintiff's consent." *Arrington v. City of Chicago*, 2022 WL 2105871, at *13 (N.D. Ill. June 10, 2022). The Officer Defendants argue that Plaintiff's claim for battery fails because their use of force was justified under an Illinois statute that governs a police officer's use of force. That statute provides that a police officer can use deadly force when "he reasonably believes, based on the totality of the circumstances, that such force is necessary to prevent death or great bodily harm to himself or such other person." 720 ILCS 5/7-5(a). However, as explained above, there are genuine disputes of material fact as to whether the Officer Defendants' use of force was reasonable, and those same disputes of fact preclude a finding of summary judgment here.

The Officers Defendants also argue that they are entitled to immunity on the battery claim under the Illinois Tort Immunity Act, which "provides immunity to local government employees from liability for acts committed in the execution or enforcement of any law unless that act was willful or wanton." *Davis v. City of Chic.*, 2014 IL App (1st) 122427, ¶ 117. The Officer Defendants cite case law that states an officer's actions are not willful and wanton when his use of deadly force was objectively reasonable, *see Mendez v. City of Chicago*, 2022 WL 4466235, at *20 (N.D. Ill. Sept. 26, 2022), but as noted above, there are genuine disputes of material fact on the reasonableness of the Officer Defendants' actions. Thus, the Court denies the Officer Defendants' motion as to Count II.

### IV.     Count III – False Arrest

In Count III of the complaint, Plaintiff brings a claim for false arrest under Section 1983 and the Fourth Amendment. However, the factual basis for the claim in Plaintiff's response brief departs from the allegations in the operative complaint. In the complaint, Plaintiff's false arrest claim is based on his alleged detention after the shooting. He alleges that after he was shot, he was "taken into custody and held for several hours in the police station." [5] ¶ 20. Plaintiff further alleges, "No charges were filed against [him] because he did not commit any crime;" "He was not free to go;" and "The seizure and detention was unlawful" and "the result of what the Defendants

falsely told the authorities and other police." *Id.* ¶¶ 21, 22, 24, 25. But in his response to the summary judgment motion, Plaintiff argues that he was initially arrested when the Officer Defendants pointed their guns at him and shot him. Plaintiff cannot add a new factual basis for his false arrest claim that was not previously presented in the complaint in response to the motion for summary judgment. *See, e.g.*, *Whitaker v. Milwaukee Cnty., Wis.*, 772 F.3d 803, 808 (7th Cir. 2014). And while facts about the shooting are alleged elsewhere in the complaint, simply incorporating those allegations by reference is insufficient to provide the Officer Defendants fair notice that the shooting itself also serves as the basis of the false arrest claim, since the claim alleges only that Plaintiff was arrested after the shooting, not as a result of the shooting itself. *See Anderson v. Donahoe*, 699 F.3d 989, 998 (7th Cir. 2012); *Williams v. City of Chicago*, 2018 WL 4075755, at *7 (N.D. Ill. Aug. 27, 2018). Because the complaint does not allege the shooting itself as a factual basis for Plaintiff's false arrest claim, the Court declines to consider it and will only consider the claim as alleged in the complaint.

Neither party disputes that after the shooting, Plaintiff was taken to the hospital, where he was placed under arrest for the offense of aggravated assault of a peace officer. The Officer Defendants argue that they are entitled to summary judgment because they did not personally arrest Plaintiff. However, a police officer who causes a false arrest, such as by providing false information, can be liable even if he was not the arresting officer. *See, e.g.*, *Acevedo v. Canterbury*, 457 F.3d 721, 723 (7th Cir. 2006) ("A police officer who files a false report may be liable for false arrest if the filing of the report leads to a seizure in violation of the Fourth Amendment, even if he did not conduct the arrest himself."). Here, Plaintiff offers facts that, when viewed in the light most favorable to him, suggest that the Officer Defendants caused his later arrest. For example, the arrest report notes that the arrest stems from an incident with the Officer Defendants, and they were the only officers on the scene before the shooting, so it is reasonable to infer they provided information about the incident, which caused the arrest. And because the parties offer irreconcilably differing versions of the shooting, a reasonable jury crediting Plaintiff's version could find that the Officer Defendants provided false information to effectuate the arrest. Thus, summary judgment is not warranted on this ground.

The Officer Defendants further argue that summary judgment should be granted in their favor because there was probable cause for Plaintiff's arrest. The existence of probable cause is an "absolute defense" to a false arrest claim. *Lawson v. Veruchi*, 637 F.3d 699, 703 (7th Cir. 2011). The plaintiff bears the burden of demonstrating a lack of probable cause. *Madero v. McGuinness*, 97 F.4th 516, 522 (7th Cir.), *cert. denied*, 145 S. Ct. 280 (2024). "Probable cause exists if, at the time of the arrest, the facts and circumstances within the defendant's knowledge 'are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense.'" *Lawson*, 637 F.3d at 703 (quoting *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008)).

Notably, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). "That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.* Thus, as long as there was probable cause to arrest a plaintiff for any criminal offense, even one for which he was not arrested or charged, a

8

plaintiff's claim for false arrest fails. *See, e.g., id.* at 154–55; *Fox v. Hayes*, 600 F.3d 819, 837 (7th Cir. 2010); *Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007).

The Officer Defendants argue there was probable cause to arrest Plaintiff for aggravated assault as well as other crimes. They argue:

> The Officers observed that Plaintiff and A.A. advanced on the Officers and threatened them with the gun, committing aggravated assault against the Officers. 720 ILCS 5.0/12-2-B-4.1. Additionally, the Officers observed Plaintiff drinking on the public way (8-4-030), walking in the public roadway under the influence of alcohol (625 ILCS 5/11-1010), and disorderly conduct (8-4-010).

[156] at 25.[6] However, these arguments fail because all the facts the Officer Defendants rely on in support of this argument are either disputed by Plaintiff or not supported by the record. First, as noted throughout this opinion, it is genuinely disputed whether Plaintiff and A.A. advanced on the Officers and threatened them with the gun, which requires denial of any probable cause claim for aggravated assault and disorderly conduct. Furthermore, although Plaintiff was holding a wine bottle at the time of the shooting, Plaintiff denies drinking from it, and the video evidence does not show him drinking from it. *See* PRDSOF ¶ 27; DRPSOAF ¶ 18. There are also no facts that show that the Officer Defendants were aware that Plaintiff had been drinking on a public road. This results in a material dispute about probable cause for drinking in a public way or walking on a public road under the influence. Accordingly, summary judgment on this claim is denied.

## V.      Count IV – Indemnification

Defendant City of Chicago moves for summary judgment on the indemnification claim against it (Count IV). Plaintiff brings this claim pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102. Under Section 9-102, "[a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages . . . for which it or an employee while acting within the scope of his employment is liable" as provided by the statute. Neither party disputes that the City would be entitled to summary judgment if the Court grants summary judgment for the Officer Defendants. Having denied the Officer Defendants' motion for summary judgment, the Court denies the City's motion on that ground.

The City argues in the alternative that the claim for indemnification is premature because the Officer Defendants have not yet been found liable. But precedent from the Seventh Circuit does not mandate dismissal of Plaintiff's indemnification claim at this stage. In *Wilson v. City of Chicago*, the Seventh Circuit stated that a plaintiff need not wait until final judgment to proceed under the Illinois indemnification statute. 120 F.3d 681, 685 (7th Cir. 1997). The court noted that it did not "see any benefit from forcing [the plaintiff] to wait until a final judgment was entered."

---

[6] The Officer Defendants also assert that after Plaintiff was arrested, it was also learned that Plaintiff consumed illegal drugs, contributed to the delinquency of minors, committed mob action, was in violation of conditions of pretrial release, failed to properly secure a weapon, and committed unlawful use of a weapon by a felon. But this knowledge is irrelevant to the probable cause analysis because it was learned after the arrest. *See Harney v. City of Chicago*, 702 F.3d 916, 922 (7th Cir. 2012) (noting the inquiry into probable cause "is limited to what the officer knew at the time of the arrest"); *Madero*, 97 F.4th at 524 ("Additional evidence discovered later 'is irrelevant to whether probable cause existed at the crucial time' of the arrest." (quoting *Braun v. Village of Palatine*, 56 F.4th 542, 549 (7th Cir. 2022))).

*Id.* Similarly, in *Vinson v. Vermilion County, Illinois*, the Seventh Circuit reversed the dismissal of Section 1983 claims against employees of two county sheriff's departments. 776 F.3d 924, 930 (7th Cir. 2015). In doing so, the court cited *Wilson* and stated that the indemnification claims under Section 9-102 against the counties "must also be reinstated." *Id.* Other district courts follow this reasoning and routinely allow plaintiffs to proceed with indemnification claims prior to a final judgment of liability against individual employees. *See, e.g.*, *Cates v. Manning*, 2020 WL 1863299, at *2 (N.D. Ill. Apr. 14, 2020); *Griffin v. Meagher*, 2009 WL 5174684, at *5 (N.D. Ill. Dec. 21, 2009).

Consistent with *Wilson*, the Court sees no benefit in forcing Plaintiff to wait until a final judgment has been entered to bring a claim for indemnification against the City. For this reason, the City's motion for summary judgment is denied.

### Conclusion

For the above reasons, the Officer Defendants' and the City of Chicago's motions for summary judgment [153] [156] are denied.

**SO ORDERED.**

Dated: March 27, 2026

_____
Sunil R. Harjani
United States District Judge

10